## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **AVIGAIL LEWIS BITON** *et al.* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 01-382 (RMC)** |
| | ) | |
| **THE PALESTINIAN INTERIM SELF-** | ) | |
| **GOVERNMENT AUTHORITY,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### MEMORANDUM OPINION

Avigail Lewis Biton, individually and on behalf of her children, and Rachel Asraf

bring suit under the Antiterrorism Act of 1991 ("ATA"), 18 U.S.C. § 2333, and various tort theories

against the Palestinian Interim Self-Government Authority, also known as the Palestinian Authority

or the Palestinian National Authority ("PA"), and the Palestinian Liberation Organization ("PLO").[1]

Pending before the Court is Defendants' Motion to File Answer Out of Time and to Vacate Entry

of Default, which is opposed by the Plaintiffs.

### I.  BACKGROUND

The underlying facts of this case may be simply stated: at approximately 7:30 a.m.

on November 20, 2000, a roadside device exploded near a bus that was transporting elementary

---

[1]  This Court has dismissed claims against Yasser Arafat, former president of the PA and chairman of the PLO; two senior members of the Palestinian Preventive Security Service ("PPSS"); two members of the Palestinian Police Service ("PPS"), and 99 John Does. *See Biton v. Palestinian Interim Self-Government Authority*, 310 F. Supp. 2d 172 (D.D.C. 2004).  It also rejected Defendants' Supplemental Motion to Dismiss on grounds of sovereign and governmental immunity based on Palestine's asserted statehood and Defendants' roles as "essential core elements of Palestine." *See Biton v. Palestinian Interim Self-Government Authority*, 412 F. Supp. 2d 1 (D.D.C. 2005).

school children and their teachers from Kraf Darom, a former Israeli settlement in the southern Gaza Strip, toward Gush Katif.  The bombing took the life of Plaintiff's Biton's husband, Gabriel Biton, and injured Plaintiff Rachel Asraf.  Plaintiffs contend that Defendants are responsible for this bombing and the resulting deaths and injuries.  The bombing is believed by the Defendants to have been part of the "al-Aqsa Intifada," a series of violent demonstrations and clashes between Palestinians and Israeli Defense Forces that ensued following Ariel Sharon's controversial visit to the Temple Mount/Haram al-Sharif in Jerusalem in September 2000.

The Complaint in this action was filed on February 20, 2001.  A First Amended Complaint was filed on March 5, 2001, and a Second Amended Complaint was filed, with the agreement of the Defendants, on November 9, 2001.  Defendants failed to respond to the Second Amended Complaint and the clerk of the court entered default upon the Plaintiffs' motion.  *See* Dkt. #10-12.  Plaintiffs moved for default judgment, Dkt. #19, but the Defendants moved to set aside the default and for leave to file untimely a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b).  *See* Dkt. #13, 18.  In an opinion entered on November 27, 2002, this Court (Roberts, J.) found that "defendants' vague and unsupported explanations for their failure to respond to the complaint timely seem meritless," but granted their motion to set aside default and to file their Rule 12(b) motion primarily because the "case is procedurally in its early stages" and that Defendants had asserted jurisdictional defenses.  *Biton v. Palestinian Interim Self-Government Authority*, 233 F. Supp. 2d 31, 32-33 (D.D.C. 2002) ["*Biton I*"].

After the case was transferred to the undersigned, the Court denied Defendants' 12(b) motion.  *See Biton v. Palestinian Interim Self-Government Authority*, 310 F. Supp. 2d 172 (D.D.C. 2004) ["*Biton II*"].  Defendants then moved to file a Motion for Limited Reconsideration Upon a

Supplemented Record, Dkt. #30, which the Court granted on May 24, 2004, by minute entry order and directed Defendants to file a motion to dismiss.  Defendants filed their motion and related papers between August 18 and September 1, 2004, and Plaintiffs responded with a motion for partial summary judgment on the issues presented.  Dkt. #44.  The Court denied Defendants' supplemental motion in its entirety.  *See Biton v. Palestinian Interim Self-Government Authority*, 412 F. Supp. 2d 1 (D.D.C. 2005) ["*Biton III*"].  Under Federal Rule of Civil Procedure 12(a)(4)(A), entry of the Order denying Defendants' supplemental motion triggered the time for Defendants to answer the complaint, but Defendants did not file an answer.

Plaintiffs again requested entry of default against Defendants, which was entered on November 22, 2005.  Dkt. #50.  On January 27, 2006, Plaintiffs then moved under Rule 55(b)(2) for judgment by default, following a requested one-day damages hearing.  Dkt. #51.  Plaintiffs' motion has not been acted upon by the Court.

On July 24, 2006, Defendants filed an answer.  Dkt. #57.  Defendants did not seek leave to file and, in light of the default, Plaintiffs immediately filed an application to strike the answer and renewed their motion to set a damages hearing.  Dkt. #58.  Defendants belatedly filed the instant Motion to File Answer Out of Time and to Vacate Entry of Default on July 31, 2006, although they dated it July 24, 2006.

## II.  ANALYSIS

Federal Rule of Civil Procedure 6(b) provides the standard by which a court is to be guided when a party requests an extension of time to file a pleading.  When the request for an extension is made after the deadline has passed, the court may extend the deadline only "where the failure to act was the result of excusable neglect." Fed. R. Civ. P. 6(b).  A "post-deadline extension[]

may be granted only 'for cause shown' and 'upon motion.'" *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896 (1990)). "Any post-deadline motion 'must contain a high degree of formality and precision, putting the opposing party on notice that a motion is at issue and that he therefore ought to respond.'" *Smith,* 430 F.3d at 455 (quoting *Lujan*, 497 U.S. at 896 n.5). Factors to be considered in evaluating excusable neglect include the "danger of prejudice to the other party" as well as "'the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Smith*, 430 F.3d at 457 n.5 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)).

Defendants initially filed their belated answer without any motion for leave to file. "In the absence of any motion for an extension, the trial court [has] no basis on which to exercise its discretion" and determine if excusable neglect exists. *Smith*, 450 F.3d at 457. The answer without a motion was, as argued by Plaintiffs, a legal nullity. Pls.' Mot. to Strike Answer at 1. Reminded by Plaintiffs' Motion to Strike, Defendants filed the instant one-page Motion and stated, *in toto*:

> 1. Do [sic] to the death of President Arafat and the new elections defendants [sic] counsel was unable to meet with the client to further discuss the case.
>
> 2. Palestine held two elections, one for the President two months after the death of President Arafat and one for Parliament. A change of policy took place and the new President has informed counsel to litigate the cases.
>
> 3. The filing of an answer out of time does not prejudice Plaintiff's [sic].

-4-

Defs.' Mot. to File Answer Out of Time and to Vacate Entry of Default ("Defs.' Mot.") at 1.

Plaintiffs oppose and state that vacating default at this time would cause them severe harm, that the

default was intentional, and that it is the Defendants' second default in this action.  Pls.' Opp. to

Defs.' Mot. to Vacate Default Judgment (Pls.' Opp.") at 1.  Plaintiffs also argue that the Court has

rejected the Defendants' jurisdictional defenses and they have not submitted a verified answer as

required by the Local Rules of this Court.  Pls.' Opp. at 1.

        This Court's Order denying Defendant's supplemental Rule 12(b) motion was issued

on August 22, 2005.  *See Biton III*, 412 F. Supp. 2d at 11.  Under Rule 12(a)(4)(A),[2] entry of the

Order triggered Defendants' time to file their answer on or before September 6, 2005.  As conceded,

no answer was filed.  Plaintiffs assert that the failure to answer their complaint was willful and

consistent with the position Defendants took in other ATA cases at the time.  *See Knox v. Palestine*

*Liberation Org.*, 230 F.R.D. 383 (S.D.N.Y. 2005).

> [T]he Court directed defendants in this action, Palestine Liberation
> Organization and Palestinian Authority (collectively, "Defendants"), to file
> an answer to the complaint herein by not later than August 15, 2005, and
> grant plaintiffs ("Plaintiffs") leave to file for entry of judgment by default
> in the event Defendants failed to answer within the time specified.
> Defendants responded by letter to the Court dated August 15, 2005, stating
> that they "have instructed counsel to present only their position that U.S.
> courts have no jurisdiction over them and not to answer on the merits.
> Therefore no answer on the merits of the complaint will be filed."

*Id.* at 384.  The position taken by the Defendants in *Knox* was "[c]onsistent with their position in the

several cases pending in U.S. courts against them alleged to have occurred in Palestine or Israel."

---

    [2] "Unless a different time is fixed by court order, the service of a motion permitted under this
rule alters these periods of time as follows: (A) if the court denies the motion . . ., the responsive
pleading shall be served within 10 days after notice of the court's action."   Fed. R. Civ. P
12(a)(4)(A).

*See* Pls.' Opp., Ex. A (Defendants' letter dated Aug. 15, 2005).  The Defendants articulated the same

position before the District Court in Rhode Island.  *See Ungar v. Palestinian Auth.*, 325 F. Supp. 2d

15, 65 (D.R.I. 2004), *aff'd sub nom., Ungar v. Palestinian Liberation Org.*, 402 F.3d 274 (1st Cir.

2005), *cert. denied*, 126 S. Ct. 715 (2005).  The Defendants essentially concede that their failure to

answer the complaint in the instant case can similarly be traced to their instructions to their counsel.

*See* Defs.' Mot. at 1 ("A change of policy took place and the new President has informed counsel

to litigate the cases.").  It is therefore clear to the Court that the Defendants' failure to file an answer

timely was not due to "excusable neglect" but to a selected strategy.  These facts belie Defendants'

explanations for their tardy filing.

     This conclusion is buttressed by the fact that Mr. Arafat died in late 2004 and

elections in the PA were held in early 2005 and again in early 2006, giving no basis for Defendants'

statements to the Court that those events precluded filing an answer before July 2006.  Indeed, these

Defendants have been actively involved in litigating other cases during the time period that counsel

asserts it could not communicate with its clients.  *See* Pls.' Opp., Exs. C, D, E, F, G, and H.  For

example, they filed an answer in another case in this District, *Gilmore v. Palestinian Auth.*, No. 01-

00853, on April 24, 2006, months before they attempted to file an answer in this matter.  Pls.' Opp.,

Ex. C.

     Federal Rule of Civil Procedure 55(c) states that "[f]or good cause shown the court

may set aside an entry of default."  The Defendants have not shown good cause.  "[T]he first factor

to be considered" in reviewing a motion to vacate default "is whether the default was willful."

*Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980).  "[D]ecisions deliberately made" are not

grounds for relief from default even when "subsequent events reveal that such decisions were

unwise." *Federal's, Inc. v. Edmontron Inv. Co.*, 555 F.2d 577, 583 (6th Cir. 1977).  The Court will not vacate the entry of default because the Defendants' strategic decision to not answer Plaintiffs' complaint does not satisfy the "good cause shown" standard of Rule 55.

Additionally, the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602-1611, does not grant authority to the Defendants to file the answer out of time and without excusable neglect.  *See Ungar v. Palestinian Liberation Org.*, 402 F.3d at 294 (noting that after two motions to dismiss were denied and defendants failed to answer the complaint, "the district court acted well within the encincture of its discretion in entering the default"); *see also Compania Interamericana Export-Import, S.A. v. Compania Domincana De Aviacion*, 88 F.2d 948, 951-52 (11th Cir. 1996) (affirming default against foreign state agency and holding that "if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief").  This is not a situation in which the foreign defendants are strangers to the court system in the United States or were caught unaware of this pending suit or were not represented by counsel; they vigorously litigated two motions to dismiss before consciously deciding not to file an answer and also not to appeal this Court's ruling dismissing their claims of sovereign immunity.  *See Ungar*, 402 F.3d at 293 ("After all, a district court's denial of a motion to dismiss a complaint on the ground of foreign sovereign immunity is immediately appealable under the collateral order doctrine.") (citing, *inter alia*, *Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 196 (D.C. Cir. 2004)).

This lawsuit is hoary with age.  "There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from."  *Ackermann v. United States*, 340 U.S. 193, 198 (1950).  However, notwithstanding default by the Defendants, the Court cannot enter a

default judgment unless Plaintiffs establish their right to relief by evidence satisfactory to the Court. *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 262 (D.D.C. 2001).  This matter will be referred to a Magistrate Judge for a report and recommendation, after a hearing.

### III.  CONCLUSION

Defendants' Motion to File Answer Out of Time and to Vacate Entry of Default will be denied.  Plaintiffs' motion for a hearing will be granted, and Plaintiffs' motion to strike the answer will be denied as moot.  This matter will be referred to Magistrate Judge John F. Facciola for a report and recommendation after a hearing.   A memorializing order accompanies this memorandum opinion.

Date: September 28, 2006                         _____/s/_____
                                                 ROSEMARY M. COLLYER
                                                 United States District Judge