## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AVIGAIL LEWIS BITON** *et al.*, )<br><br>**Plaintiffs,** )<br><br>**v.** )<br><br>**PALESTINIAN INTERIM SELF-**<br>**GOVERNMENT AUTHORITY,** *et al.*, )<br><br>**Defendants.** ) | **Civil Action No. 01-382 (RMC)** |

## <u>MEMORANDUM</u>

Following the Clerk's entry of default as to Defendants Palestinian Interim Self-Government Authority ("PA") and the Palestinian Liberation Organization ("PLO"), Plaintiffs moved for default judgment on January 27, 2006. *See* Dkt. No. 51. In July 2006, the PA and PLO moved to file their answer out of time and to vacate the entry of default. *See* Dkt. No. 59. The Court denied that motion on September 29, 2006, and referred the matter to Magistrate Judge John M. Facciola for a report and recommendation after a hearing on damages. *See* Dkt. No. 63. Without further leave, Defendants filed an Opposition to Plaintiffs' Motion for Entry of Default Judgment on May 31, 2007. *See* Dkt. No. 84. Because that motion raised new arguments challenging the Court's jurisdiction, the Court ordered Plaintiffs to file a response. Plaintiffs filed their response on September 18, 2007. *See* Dkt. No. 94.

Default has been entered against these Defendants twice already in this lawsuit. *See* Dkt. Nos. 10-12 & 50. The Court denied their Motion to File Answer Out of Time and to Vacate Entry of Default last year because it was clear that their failure to file a timely answer "was not due to 'excusable neglect' but to a selected strategy." *Biton v. Palestinian Interim Self-Government*

*Authority*, 239 F.R.D. 1, 4 (D.D.C. 2006).  This time they argue that default judgment should not be

entered with respect to claims under the Anti-Terrorism Act, 18 U.S.C. § 2833 (the "ATA"), because

Plaintiffs are residents of Israel, the attack at issue occurred in Israeli-occupied territory, and

Plaintiffs have a favorable forum in Israel; they argue that default judgment should not be entered

with respect to Plaintiffs' supplemental claims because Israeli law applies; and they argue that

default judgment should not be entered against the PA because it is entitled to immunity under the

ATA as a "foreign state."  Defs.' Opp. at 2-3.  Defendants elaborate on their final argument:

> We recognize that the court previously has held that [D]efendants are
> collaterally estopped from arguing that Palestine is a "foreign state" for
> purposes of the ATA.  New developments, namely an Israeli court's
> recognition that the [PA] is entitled to immunity and the Israeli withdrawal
> from the Gaza Strip, provide a basis for revisiting the [PA's] immunity from
> suit.  If the court concludes that the [PA] is not a "foreign state," then the
> [PA] should be treated as a political subdivision of Israel and found to have
> immunity on that basis.

Defs.' Opp. at 3.

After reviewing the parties' submissions, the Court concludes that it has jurisdiction

in this matter.  Defendants recent filing represents only an effort to derail conclusion of this hoary

litigation.  A brief explanation of the Court's reasoning follows.

1.  Plaintiffs Avigail Biton and Rachel Asraf are citizens of the United States, and

Defendants' argument that they should not be considered U.S. nationals for purposes of the ATA

because they are domiciled abroad has no merit.  *Cf. Schneider v. Rusk*, 377 U.S. 163, 168 (1964)

("Living abroad, whether the citizen be naturalized or native born, is no badge of lack of allegiance

and in no way evidences a voluntary renunciation of nationality and allegiance.").  Indeed, the

terrorism exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(7), which, like

the ATA, requires the victim to be a U.S. national, is frequently applied in cases involving American citizens living abroad. *See, e.g.*, *Kerr v. Islamic Republic of Iran*, 245 F. Supp. 2d 59 (D.D.C. 2003); *Jenco v. Islamic Republic of Iran*, 154 F. Supp. 2d 27 (D.D.C. 2001); *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97 (D.D.C. 2000); *Cicippio v. Islamic Republic of Iran*, 18 F. Supp. 2d 62 (D.D.C. 1998).

2. Defendants argue that under the "passive personality" principle recognized in international law, this Court can exercise subject-matter jurisdiction only when a terrorist attack is specifically targeted at a U.S. citizen. However, this Court has exercised extraterritorial jurisdiction in state-sponsored terrorism cases, based in part on the passive personality principle, even though the victims were not targeted because of their U.S. citizenship. *See Wyatt v. Syrian Arab Republic*, 362 F. Supp. 2d 103, 115-116 (D.D.C. 2005) (citing *Flatow v. Islamic Republic or Iran*, 999 F. Supp. 1, 15 n.7 (D.D.C. 1988));[1] *cf. also United States v. Hill*, 279 F.3d 731, 740 (9th Cir. 2002) (finding that the passive personality theory permitted exercise of extraterritorial criminal jurisdiction where the victims of the crime were U.S. citizens despite the fact that they were not victimized or targeted because of their U.S. citizenship). Defendants cite *United States v. Vasquez-Velasco*, 15 F.3d 833 (9th Cir. 1994), without noting that the dictum on which they rely was expressly limited to the facts of that case. *See United States v. Neil*, 312 F.3d 419, 423 (9th Cir. 2002).

3. Defendants argue that the lack of a commonly accepted definition of "terrorism" under international law necessarily means that universal jurisdiction does not exist here. This argument has no merit. The plain language of the ATA defines "international terrorism" for

_____

[1] Although *Wyatt* and *Flatow* were brought under the FSIA's terrorism exception, 28 U.S.C. § 1605(a)(7), the analysis applies equally to cases brought under the ATA.

purposes of the Court's jurisdiction.  *See* 18 U.S.C. § 2333 (defining the term to include acts that "occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum").  Thus, the statutory definition controls regardless of any ambiguities in international law.  *See, e.g.*, *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296, 302 (D.C. Cir. 2005) ("Never does customary international law prevail over a contrary federal statute.").  In any event, the conduct at issue here — intentionally bombing a bus load of school children — is "terrorism" by any measure, alleged ambiguities in international law notwithstanding.  *See, e.g.*, *Estate of Klieman v. Palestinian Authority*, 424 F. Supp. 2d 153, 166 (D.D.C. 2006) (holding that an armed attack on a civilian bus violates "established norms of warfare and armed conflict under international law"); *Almog v. Arab Bank*, 471 F. Supp. 2d 257 (E.D.N.Y. 2007) (concluding that Palestinian attacks on civilians were actionable as crimes against humanity despite the absence of an agreed-upon definition of "terrorism").

4.  Defendants remain collaterally estopped from asserting a defense of sovereign immunity by the prior decisions in *Ungar v. Palestine Liberation Organization*, 402 F.3d 274 (1st Cir. 2005) and *Knox v. Palestine Liberation Organization*, 306 F. Supp. 2d 424 (S.D.N.Y. 2004). *See Biton v. Palestinian Interim Self-Government Authority*, 412 F. Supp. 2d 1, 4-5 (D.D.C. 2005). First, events subsequent to the filing of the complaint — implementation of Israel's Disengagement Plan and a decision of an Israeli judge — cannot change Defendants' status as of the time this action commenced.  *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003) (noting the "'longstanding principle that the jurisdiction of the Court depends upon the state of things at the time of the action

brought.'"").  Second, while "changes in facts essential to a judgment will render collateral estoppel inapplicable in a subsequent action raising the same issues," *Montana v. United States*, 440 U.S. 147, 159 (1979), this principle is of no assistance to the Defendants.  The Disengagement Plan has not allowed the PA to exercise effective authority anywhere in the West Bank today.  *See* Kuperwasser Aff. ¶¶ 27-33.  And it has no governmental control at all over any territory or population in the Gaza Strip and has suffered only a continuing deterioration of its control from 2005 (when the Disengagement Plan was implemented) to the coup by Hamas in June 2007.  *See id.*  Third, the decision by an Israeli district court in *Elon Moreh* does not constitute a clear change in controlling law, which can in some circumstances negate the application of collateral estoppel.  *See generally North Georgia Elec. Membership Corp. v. City of Calhoun, Ga.,*, 989 F.2d 429, 433-435 (11th Cir. 1993) (collecting cases).  Accordingly, *Elon Moreh* cannot derogate from the preclusive effect of *Ungar* and *Knox*.

5.  Defendants' final claim, that the PA must be a political subdivision of the State of Israel if it is not a sovereign entity, is also without merit.  The argument has been rejected by the Israeli government and the Israeli Supreme Court.  *See* Reisner Aff. at ¶¶ 52-61.

Notwithstanding Defendants' new arguments, the Court has jurisdiction in this matter and will proceed to rule on Plaintiffs' motion for judgment by default.  This matter remains referred to Magistrate Judge Facciola for a report and recommendation.

DATE : September 26, 2007

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge